[Crim. No. 3221. In Bank.—June 5, 1929.] ·

In the Matter of the Petition of MANUEL ROMERO for a Writ of Habeas Corpus.

342

Thomas M. Carlson for Petitioner.

Archibald B. Tinning, Warren Olney and T. H. De Lap for Respondent.

CURTIS, J.—Petitioner seeks his release from imprisonment by means of a writ of *habeas corpus*. He alleges that he is unlawfully imprisoned and illegally restrained of his liberty by the sheriff of the county of Contra Costa. The return of the sheriff shows that he holds and retains in his custody the body of the petitioner under and by virtue of an order of commitment of the justice's court of the fifteenth judicial township of said county of Contra Costa issued in the case of the *People of the State of California* v. *Manuel Romero,* and that said order of commitment was issued upon a judgment of said court, adjudging said petitioner to be guilty of a misdemeanor, to wit, disturbing the peace.

The ground upon which the petitioner bases his claim that his imprisonment is illegal is set forth by proper and sufficient allegations in said petition. This ground as thus stated is that said justice's court is not, and at the times the proceedings against petitioner were pending therein, which resulted in his conviction and imprisonment, was not, a legally constituted court, and therefore that all such proceedings, including the issuance of the commitment

under which he is now held by said sheriff, are illegal and void.

The facts upon which this claim is made as they appear from the record before us are that the fifteenth judicial township of the county of Contra Costa is situated in the city of Richmond, and that the boundaries of said township and of said city are identical and coterminous; that said city of Richmond in the year 1909 under the powers granted it by the constitution of the state adopted a charter for the government of its municipal offices; that by the terms of said charter there was established in said city a police court known as the "Police Court of the City of Richmond," and that by the terms of said charter "Within the city limits said court shall have concurrent and co-ordinate jurisdiction with township justices' courts in all matters and things in which said justices' courts now or may hereafter have jurisdiction; and the judge of said police court shall have as aforesaid like authority, power and jurisdiction as the justices of said justices' courts." This power to frame their own charters was given to cities of the state by sections 8 and 8½ of article XI of the constitution. Section 8½ authorized a city to establish a police court by means of a charter and at the time said city of Richmond adopted its charter merely authorized cities to provide in their charters "For the constitution, regulation, government and jurisdiction of police courts, and for the manner in which, the times at which, and the terms for which the judges of said courts shall be elected or appointed, and for the compensation of said judges and of their clerks and attaches." In 1914 said section 8½ was amended so as to authorize cities by their charters to establish police courts and also municipal courts, and in its amended form this section further provided that "In any city or any city and county, when such municipal court has been established, there shall be no other court inferior to the superior court."

The petitioner now contends that by this provision of the constitution the justice's court existing and acting in said fifteenth judicial township of said county of Contra Costa at the date of the adoption of said constitutional amendment has been abolished and that at the time the proceedings were pending against petitioner in which said

commitment was purported to have been issued there was no such court as the justice's court of the fifteenth township of said county.

This contention is based entirely upon the decision in the case of *Robertson* v. *Langford,* 95 Cal. App. 414 [273 Pac. 150], rendered December 13, 1928. That case arose in the city of San Jose, which city had adopted a charter which provided for a police court with "all of the powers, authority and jurisdiction, both civil and criminal, that are now or may hereafter be conferred by law upon justices of the peace. . . . " The charter of the city of San Jose was adopted under the power granted to cities of this state having a population of more than thirty-five hundred by sections 8 and 8½ of article XI of the constitution of the state to frame charters for their own government. At the time of the adoption of its charter by the city of San Jose said section 8½ of article XI contained the foregoing provision providing that: "In any city or any city and county, when such municipal court has been established, there shall be no other court inferior to the superior court; . . . " It was the view of the court rendering the decision in *Robertson* v. *Langford, supra,* that the so-called police court provided for in the charter of said city of San Jose was in legal effect a municipal court in the sense in which said term "municipal court" was used in the above-quoted provision of said section 8½ of article XI of the constitution, and that as there had thus been established by said charter a municipal court in said city of San Jose, there could not be in said city any other court inferior to the superior court. Accordingly, it was held that by the adoption of said charter which in effect provided for a municipal court in said city, the justice's court, which prior thereto had existed in said city ceased to exist and was by the express declaration of the constitution, as contained in section 8½ of article XI thereof, abolished and superseded by said municipal court.

The question presented in the present proceeding differs from that decided in the case of *Robertson* v. *Langford, supra,* in at least one most material respect. In that case, as we have seen, it was decided that a city justice's court had been abolished by the establishment of a municipal court in said city in pursuance of the power granted by said

constitutional provision. In the present proceeding petitioner contends not that a city justice's court but that a township justice's court has been abolished by the enactment of said constitutional provision.

Justices' courts for both townships and cities are provided for in section 103 of the Code of Civil Procedure. By the first paragraph of said section it is provided that "There shall be at least one justice's court in each of the townships of the state, for which one justice of the peace must be elected." By the second paragraph of said section it is further provided: "In every city (of certain designated classes to one of which the city of Richmond belongs) there must be one justice of the peace, to be elected in like manner, by the electors of such cities." By section 4015 of the Political Code the board of supervisors of each county are authorized and directed to divide their respective counties into townships for the purpose of electing justices of the peace and constables. It will thus be seen from the scheme of government adopted by the legislature that justices' courts in townships are entirely different and distinct from justices' courts in cities, and that in all cities of the state where this general law applies, and which belong to one of the classes enumerated in section 103 of the Code of Civil Procedure, these courts exist side by side with justices' courts of the township of which said city is a part. The city justice's court is an office of the city, and the justice thereof is elected by the electors of said city. The township justice's court is a township office and the incumbent of said office is elected by the electors of said township. The fact that the city is a part of the township or constitutes the whole of the township does not make the justice's court of the township a justice's court of the city. In such a case they each retain their separate and distinct entity. This was held in the recent case of *Platnauer* v. *Board of Supervisors*, 65 Cal. App. 666, 668 [225 Pac. 12, 14], where the court had under review the question of the status of the justice's court of the city of Sacramento, and in determining that question said: "From the foregoing it clearly appears that the offices of township justice of the peace and city justice of the peace are distinct entities, though having certain jurisdiction in common. The fact that Sacramento township and

the city of Sacramento embrace the same territory is a mere incident. In other counties a city of the same class may constitute a part only of a judicial township.''

In the light of the foregoing well-established principles we will now consider the provision of the constitution which the petitioner contends abolishes the justice's court of the fifteenth judicial township of said county. It reads, as we have already seen, as follows: ''In any city or any city and county, when such municipal court has been established, there shall be no other court inferior to the superior court.'' Paraphrasing this provision of the constitution, it would read: ''Where such municipal court has been established in any city or in any city and county, there shall be no other court inferior to the superior court in said city or in said city and county. Manifestly this reference in the constitution is to inferior courts in the city or city and county in which the municipal courts have been established, and was not intended to apply to the justice's court of the township in which said city may be situated, or of which said city may be a part. As we have seen, these two courts are two entirely different and distinct entities, and a reference to one cannot by any reasonable construction of the language used be held to have been intended to include or refer to the other. We therefore conclude that the justice's court of said township fifteen was not abolished by the provision of the constitution above quoted even assuming that the police court theretofore established in the city of Richmond was vested with all the powers and jurisdiction of a municipal court.

These views render it unnecessary for us to decide whether the provision of the constitution herein considered is retroactive and therefore applies to a city which had at the date of the adoption of said constitutional amendment provided in its charter for courts vested with the jurisdiction of municipal courts. In this case it makes no difference in so far as the charter of the city of Richmond is concerned whether it was enacted prior or subsequent to the adoption of said constitutional amendment. Even if adopted after the enactment of said amendment and while it was in full force and effect, neither said amendment nor said charter provision, providing for a police court, would in any way affect or impair the validity of the justice's court of said township.

The writ is denied and the prisoner is remanded to the custody of the sheriff of said county of Contra Costa.

Richards, J., Preston, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.

Shenk, J., concurred in the order.